UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANE COOK, and <br> MICHAEL COOK, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF BELLA VILLA, and <br> CHIEF OF POLICE EDWARD LOCKE, JR., <br><br> Defendants. | Case No. 4:06-CV-01531-SNL |

## **MEMORANDUM**

This matter comes before the Court on Defendants' motion for summary judgment (Doc. #30, filed Nov. 6, 2007). Responsive pleadings have all been filed. This cause of action is currently set for trial on the Court's docket of April 28, 2008.

### *LEGAL STANDARD*

Although summary judgment motions may be viewed as tools of "great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact," *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); courts have repeatedly recognized the severity of summary judgment as a remedy, to be granted only in cases where the movant establishes his right to judgment with such clarity so as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

After the movant demonstrates the absence of any genuine issue of material fact, *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962); *Mt. Pleasant*, 838 F.2d at 273; the nonmoving party must set forth specific facts which demonstrate sufficient evidence for a potential jury verdict in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Putnam v. Unity Health Systems, Inc.*, 348 F.3d 732, 733-34 (8th Cir. 2003) ("... the nonmoving party must 'substantiate his allegations with sufficient probative evidence ∴ based on more than

mere speculation, conjecture, or fantasy.' ") (quoting *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)); *see also* FED. R. CIV. P. 56(e) (2007).

In ruling on a motion for summary judgment, the court should review all facts supported by the record, and any logical inferences arising therefrom, in the light most favorable to the nonmoving party. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). *See also*, *e.g.*, FED. R. CIV. P. 56(e); *Robert Johnson Grain Co.*, 541 F.2d at 210 (conflicts of evidence must be construed in favor of non-movant). In that way, summary judgment should not be granted "unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998); *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)).

## *BACKGROUND*

For purposes of the instant motion, the Court takes notice of Plaintiffs' version of the corroborated facts as follows.

During the relevant period, Plaintiffs Diane and Michael Cook were a married couple residing in Saint Louis County, Missouri. On August 27, 2005, Diane was driving a vehicle, accompanied by Michael and two friends. Sometime after midnight, Defendant Locke, working alone, initiated a traffic stop of Diane's vehicle on the right shoulder of Missouri Highway 55. It is undisputed that the purpose of the stop was lawful.

Locke approached Plaintiffs' vehicle on the driver's side and asked Diane if she had been drinking. Diane gave a non-responsive, sarcastic response. According to Locke, he smelled alcohol at this point. Locke directed Diane to leave her car's engine running, exit the vehicle, and stand beside his patrol car, parked approximately one-half of a car length away. Diane complied.

While Locke and Diane stood next to the patrol car, Locke reached in and obtained a portable blood alcohol analyzer. Without identifying the device, he held the analyzer and instructed Diane to blow into his fist. Diane was unfamiliar with the device and asked why Locke wanted her to do so, at which point the following dialogue ensued:

Locke: Because I told you to. That's why.
  Diane: Well, I don't understand.

> Locke: You have failed to maintain a single lane for a full mile, so you either blow on this or you're going to jail for DWI.
>
> Diane: For starters, you haven't been behind me for a full mile, and for second, I don't know what you have in your hand, where it came from, what it's for.
> …
> You haven't even, you know, said anything that, you know, I'm stumbling, I'm stinking of alcohol, you know. Don't you do some kind of roadside test or sobriety test or - - You haven't looked in my eyes or anything.
>
> Locke: I can do whatever I want and I can choose whatever test I want, so either you blow in this or you're going to jail for DWI.

Ultimately, Diane refused and was arrested for driving while intoxicated ("DWI"). Once handcuffed, Diane quipped, "Fine, We'll see who's drunk." Locke then "slammed" her head and chest onto the hood of his patrol car, to which Diane responded "Damn, Danno, take it easy." Locke then forcefully thrust his knee between her legs.

Locke proceeded, for approximately one minute, to conduct a search of Diane's person. During the search, Diane states that Locke "stroked" and "pawed at" her body-- moving his hands down her waist, to her buttocks and thighs, and finally into the front of her sweater up toward her breasts. The search ended abruptly when Michael, along with a second passenger, quickly exited his vehicle toward Locke and asserted "Yo, dude, what's the problem? You can't be touching her thataway." Locke desisted and approached Michael, demanding he return to his vehicle. (*See* complaint, Doc. #1 at ¶¶53-62, filed Oct. 17, 2006.) Locke then drew and fired his taser gun, striking Michael's chest and causing him to collapse.

Diane yelled for Locke to stop hurting her husband. Locke then "slammed" Diane's head into her vehicle and walked her to his patrol car, placing her in the front seat. Locke returned to where Michael was lying and pulled him to his feet. Locke applied handcuffs and "slammed" Michael's face onto the Cooks' car, and reached around Michael's body to find and remove the taser darts. Michael informed Locke that he had already removed the darts from his chest. Locke walked Michael to the patrol car and instructed him to get inside. At this point, Michael and Diane insisted that Michael was unable to bend his neck from a then-existing injury and that he needed to back into the vehicle. Ignoring these statements, Locke pushed Michael's head into the car and demanded that he get inside. Locke then forced Michael's head down and shoved him into the back of the patrol car.

Sometime between when Diane and Michael were placed in the patrol car, additional police officers responded to the scene.

Locke positioned himself in the driver's seat of his patrol car. He then reached across Diane, seated in the passenger's seat, and slid his hand (palm facing up) under her buttocks. Diane lifted herself abruptly, asking "Did you lose something?" Locke immediately removed his hand and "grinned."

Based on the foregoing events, Plaintiffs allege that, during the traffic stop and their subsequent arrests, Locke improperly touched Diane Cook, and exercised excessive force on Plaintiff Michael Cook, thereby violating their Constitutional rights.

## *ANALYSIS*

## **Count I: Section 1983 Claims as against Defendant Locke**

Section 1983 prohibits a person acting under color of state law from depriving another person of those "rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (2000). When stating a claim under Section 1983, plaintiff must establish (1) the deprivation of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was committed under "color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

### *i. Violation of the Fourth Amendment*

The Fourth Amendment protects against unreasonable searches and seizures.[FN1] A Section 1983 action is supported when a police officer allegedly violates this right. *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008) (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)). Notwithstanding, qualified immunity shields a police officer from liability where "his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Moore*, 514 F.3d at 759 (quoting *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir. 2007)).

> **FN1**. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." U.S. Const. amend. IV.

In deciding whether qualified immunity applies, the Court must first determine whether Locke violated a constitutional right, i.e. that an unlawful search and/or seizure occurred. *Moore*, 514 F.3d at 759 (citing *McCoy v. City of Monticello,* 342 F.3d 842, 846 (8th Cir. 2003)).

Here, assuming Diane's version of the facts as true,[FN2] the Court does not find Locke's post-arrest conduct (where it is alleged that he, for no apparent reason, slid his hand underneath Diane's body) to be "objectively reasonable." Accordingly, Count I: Violation of the Fourth Amendment, as it pertains to Diane Cook, shall survive summary judgment. *Compare Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000) (where there is no dispute as to the relevant facts, "objective reasonableness" is a question of law).

As it regards Michael Cook, the Court finds Locke's conduct, in tasering and causing Michael's head to strike the subject vehicles, objectively reasonable as a matter of law. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). In addition to being alone and outnumbered by presumably intoxicated suspects, Diane's sarcastic comments and noncompliance, coupled with Michael's wayward behavior[FN3] in exiting the vehicle and opposing Locke's arrest and/or search could lead a reasonable officer to respond in the manner described of Locke.

> **FN2**. Locke testified that, after placing Diane in handcuffs, Michael stepped out of the vehicle and approached him; at which point, Locke immediately placed Diane in the squad car. Locke further stated that he did not frisk, pat down, or otherwise touch Diane in the manner set forth above. He further disputes the subsequent touching in the patrol car. Notwithstanding Locke's version of the contested events, for purposes of the instant motion, the Court must adopt the corroborated facts set forth by the nonmoving party, i.e. Plaintiffs.
>
> **FN3**. "[A] traffic stop significantly curtails the 'freedom of action' of the driver *and the passengers,* if any, of the detained vehicle." *Berkemer v. McCarty,* 468 U.S. 420, 436 (1984) (emphasis added). Under Missouri law, it is a crime to resist or otherwise evade a police officer's lawful directions; or to interfere with the officer's arrest, stop or detention of an individual. MO. REV. STAT. §575.150 (2007); *id*. §300.080. *See also Berkemer*, 468 U.S. at 437 ("Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so."); *e.g.*, *State v. Taber*, 73 S.W.3d 699, 705 (Mo. Ct. App. 2002).

Furthermore, Plaintiffs' complaint fails to allege, and the record does not support a finding of, any permanent physical injury[FN4] arising from the disputed events. *See Crumley*, 324 F.3d at 1007 (citing *Foster v. Metro. Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990), *and Greiner*

*v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994)). *C.f. Samuelson v. City of New Ulm*, 455 F.3d 871, 876 (8th Cir. 2006). According, Count I: Violation of the Fourth Amendment, as it pertains to Michael Cook, shall be dismissed.

### *ii. Substantive Due Process*

The Due Process Clause protects against government officials "abusing [their] power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (in turn quoting *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989)) (internal quotations omitted). To prevail here, Plaintiffs must prove that Locke's conduct (i) "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Lewis*, 523 U.S. at 847 n.8 (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)); and (ii) "violated one or more fundamental rights," *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007) (quoting *Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004)).

Here, Plaintiffs allege that Locke's improper touching and excessive force during their respective seizures and arrests violated their rights to substantive due process. Upon review of the matter, the Court disagrees. Specifically, Plaintiffs' claims fall within the context of an investigatory stop and arrest of a free citizen, and shall be properly and sufficiently addressed by that protection afforded by the Fourth Amendment. *Graham*, 490 U.S. at 395; *Roberts v. Ross*, No. 91-1184, 1993 WL 335758, at *1 (8th Cir. Sep. 7, 1993) (per curiam). *E.g.*, *Collins*, 503 U.S. at 125 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 (1985)).

---

**FN4**. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (citing *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968)); *id*. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.").

**Counts II &III:  Section 1983 Claims as against Defendant City of Bella Villa**

*i. Municipal Liability*

Municipal liability under Section 1983 is appropriate only in cases where a municipal "policy" or "custom" causes the Constitutional violation. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

In support of their claim, Plaintiffs allege *inter alia* that Locke is the policy maker for the City of Bella Villa, and therefore his Constitutional violations should be imputed thereto. *See Angarita v. St. Louis County*, 981 F.2d 1537, 1546-47 (8th Cir. 1992) ("Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability.") (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 138-39 (1988) (plurality opinion)).

Here, Locke testified that, the Board of Alderman makes the policies for the City of Bella Villa Police Department (although he later testified that he did in fact write policy, subject to the Board's review). Notwithstanding, while Locke may or may not have written the subject policies *per se*, he oversaw the execution of policy within the police department; and actively participated in the submission of recommendations and/or suggestions germane to the management and/or administration of the same. For purposes of the instant motion, the Court is satisfied with Locke's contact with and influence over the policy makers so as to possibly impute liability to the City.[FN5] *See Angarita*, 981 F.2d at 1546 ("An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business.") (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480 (1986); *Owen v. Independence,* 445 U.S. 622, 633 (1980); *and Oklahoma City v. Tuttle,* 471 U.S. 808, 823-824 (1985) (plurality opinion)). Furthermore, the record contains sufficient evidence regarding Locke's state of mind during his commission of the acts alleged.[FN6] Accordingly, until the question of liability (both its existence and the nature thereof) is resolved, the Court declines to address on whose lap it may fall. Count II shall survive summary judgment.

> **FN5**. The Court need not discuss sovereign immunity because the tort claims asserted against the City were brought exclusively under a *respondeat superior* theory, and have since been dismissed. *See* Doc. #33, filed Dec. 10, 2007.
>
> **FN6**. "[P]roof that a[n] . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken . . . by the . . .

7

authorized decisionmaker itself violates federal law will also [establish municipal liability]." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997).

### *ii. Respondeat Superior*

"We have consistently refused to hold municipalities liable under a theory of *respondeat superior.*" *Brown*, 520 U.S. at 403 (citing *Tuttle,* 471 U.S. at 818); *id*. at 828 (opinion of BRENNAN, J.); *Pembaur*, 475 U.S. at 478-79; *Praprotnik,* 485 U.S. at 122; *id*. at 137 (opinion of BRENNAN, J.); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). *See also Canton*, 489 U.S. at 385 (citing *Monell*, 436 U.S. at 694-95).

Accordingly, Count III shall be dismissed.

## Counts IV & V: State Law Claims

Pursuant to Missouri law, Plaintiffs seek relief as against Locke for indecent assault, assault and battery, and malicious prosecution.

### *i. (Indecent) Assault and Battery*

To state a claim for assault under Missouri law, plaintiff must show (i) intent to cause bodily harm or offensive contact, or apprehension of either; (ii) conduct indicating such intent; and (iii) a resulting apprehension of bodily harm or offensive contact on the part of the plaintiff. *Phelps v. Bross*, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002) (quoting M.A.I. 23.01 (1981)). Indecent assault requires plaintiff to prove contact which offends a reasonable sense of personal dignity. *J.D. v. M.F.*, 758 S.W.2d 177, 178 (Mo. Ct. App. 1988) (citing RESTATEMENT (SECOND) OF TORTS § 19 (1965)). Lastly, to state a claim for battery, plaintiff must prove (i) intent to cause an offensive bodily contact with another, and (ii) actual contact. *Phelps*, 73 S.W.3d at 656 (citing *Geiger*, 974 S.W.2d at 516). Construing the record in the light most favorable to the non-movant, Plaintiffs have sufficiently established their claims for common law assault and battery. Furthermore, the record demonstrates that Locke took "indecent liberties with the person of a female without her consent and against her will..." *J.D.*, 758 S.W.2d at 178 (citing *Edmisten v. Dousette*, 334 S.W.2d 746, 752 (Mo. Ct. App. 1960)). *See also State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. 2005).

Notwithstanding, the parties stipulate that an officer charged by law with duties which call for the exercise of his judgment or discretion shall not be personally liable to an individual for damages unless plaintiff proves that he exercised "unnecessary force."

Applied to the facts at bar, without having resolved those material and in dispute, the Court cannot find that Locke's alleged conduct during his "search" and post-arrest touching of Diane Cook was reasonable. Thereupon, Diane has sufficiently stated claims for indecent assault and battery. In contrast, the Court finds that Locke's conduct in gaining immediate control of the situation in order to protect himself, Plaintiffs, and potential passersby, by using physical force and ultimately his taser gun was not unreasonable under the circumstances. While acknowledging that Locke employed a significant amount of force on both Plaintiffs, the Court declines to find such force unreasonable under the circumstances. Accordingly, Count IV shall proceed only as it pertains to the alleged touchings of Diane Cook during the search and following her arrest.

### *ii. Malicious Prosecution*

In Missouri, claims for malicious prosecution " 'are regarded by law with jealousy' and 'ought not to be favored but managed with great caution.' " *Bellington v. Clevenger*, 228 S.W.2d 817, 818 (Mo. Ct. App. 1950) (quoting N. NEWELL, NEWELL ON MALICIOUS PROSECUTION at 21 (1892) *and* 18 RULING CASE LAW at 11). To state a claim here, Plaintiffs must prove the following:

(1) the commencement of a prosecution against plaintiff;
(2) its legal causation by defendant;
(3) its termination in favor of plaintiff;
(4) the absence of probable cause therefor;
(5) the presence of malice; and
(6) damage to plaintiff therefrom.

*Parker v. Color Tile Supermart, Inc.*, 655 S.W.2d 598, 599 (Mo. Ct. App. 1983) (citing *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479, 483 (Mo. 1972)).

Plaintiffs claim that Locke lacked probable cause in that he did not have jurisdiction to arrest Michael Cook. In Missouri, the test for probable cause is "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged." *Parker v. Color Tile Supermart, Inc.*, 655 S.W.2d 598, 599 (Mo. Ct. App. 1983) (quoting *Palermo v. Cottom*, 525 S.W.2d 758, 764 (Mo. Ct. App. 1975)).

Accepting Plaintiffs' version of the facts as true, under the circumstances, Michael's conduct in (i) exiting the vehicle, (ii) verbally opposing and stepping toward Locke, and (iii) refusing to comply with Locke's order to return to his vehicle during the arrest and search of Diane, sufficiently gives rise to probable cause. The case cited by Plaintiffs, *State v. Renfrow*, 224 S.W.3d 27, 31-32 (Mo. Ct. App. 2007), fails to affirm that the absence of jurisdiction to make an arrest necessarily eliminates the existence of probable cause, and the Court cannot logically conclude the same. Accordingly, Count V shall be dismissed.

An Order in accordance with this Memorandum shall be forthcoming.

Dated this 8th day of April, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**